UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------
JOHNATHAN JOHNSON,

                      Plaintiff,

           v.                                        9:07-CV-1237
                                                                 (TJM)(DEP)
B. CONNOLLY, Doctor, *et al.*,

                      Defendants.
-------------------------------------------------------------------------

**APPEARANCES**                              **OF COUNSEL:**

JOHNATHAN JOHNSON
Plaintiff *pro se*
89-A-1042

HON. ANDREW M. CUOMO            CHRISTOPHER W. HALL, ESQ.
Office of the Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

THOMAS J. MCAVOY, SENIOR JUDGE

## DECISION and ORDER

Presently before the Court is a Motion by Johnathan Johnson[1] ("Plaintiff" or "Johnson") for injunctive relief. Dkt. No. 21. The Defendants have filed a Response in opposition to the Motion (Dkt. No. 25), and Plaintiff filed a Reply. Dkt. No. 26.

**I.**     **Background.**

     **A.**     **Proceedings in the Western District of New York.**

This action was filed on February 15, 2007[2] in the Western District of New York.

---

[1] Plaintiff has filed thirty one (31) other actions in this District.

[2] Plaintiff filed an action in this District on February 12, 2007 setting forth some of the same claims with respect to denial of medications that were allegedly provided to Plaintiff at Elmira Correctional Facility, but not continued when Plaintiff arrived at Update

Initially, the Western District denied Plaintiff's application to proceed *in forma pauperis* due to the fact that Plaintiff has garnered "three strikes." Dkt. No. 4. Thereafter, Plaintiff moved for reconsideration, and the Court granted Plaintiff leave to proceed with this action *in forma pauperis*. Dkt. No. 6. The Court also directed Plaintiff to file an amended Complaint, which Plaintiff filed on April 16, 2007. Dkt. No. 7. Plaintiff filed a Motion for a Preliminary on August 14, 2007. Dkt. No. 8. However, it does not appear that the Defendants were ever directed to respond to the Motion.

On October 4, 2007 the Defendants made a Motion for a Change of Venue. Dkt. No. 14. That Motion was granted and the case was transferred to this District. Dkt. No. 16.

### B. Proceedings in this District.

Plaintiff's amended Complaint alleges causes of action for deliberate indifference due to the Upstate Correctional Facility's staff failing to provide Plaintiff with the same medications as provided to him at Elmira Correctional Facility, retaliatory transfer from Elmira to Upstate due to Plaintiff's request that video tape of an incident be preserved for future litigation, and failure to protect Plaintiff from known enemies at Upstate Correctional Facility. *See* Dkt. No. 7. With respect to the alleged failure to protect, Plaintiff alleges that he wrote to the deputy superintendent of security regarding his safety concerns "to no avail." *Id*., paragraph 26. Plaintiff further alleges that he is "being forced" by the facility administration to go to the visiting room. *Id*., paragraph 25.

Defendants filed their Answers to the amended Complaint on December 12,

---

Correctional Facility. *See Johnson v. Connolly,* 9:07-CV-0158 (LEK/GHL). Five of the named Defendants are named in both actions.

2007.  Dkt. Nos. 19 and 20.  Thereafter, on December 19, 2007 Plaintiff filed a Motion for a Preliminary Injunction.  Dkt. No. 21.  Defendants responded to the Motion for Preliminary Injunction on January 4, 2008.  Dkt. No. 25.  Plaintiff filed a Reply on January 16, 2008.  Dkt. No. 26.  Because the two Motions seek the same relief, the first Motion will be denied as moot and the Court will consider the Motion for Preliminary Injunction filed on December 19, 2007.

## II.     Motion for Injunctive Relief.

In this Motion, Plaintiff seeks an Order directing the Defendants to "transfer plaintiff to another facility for his and family safety from Upstate Correctional Facility's blood gang members to a correctional facility where plaintiff could be safe from violence on inmate visitor program [visiting room] and other areas of a state of department of correctional facility in close or close area for visits with plaintiff's family members. And in a facility that plaintiff could be properly supervise and properly protected on and off the visits at the present facility."  Dkt. No. 21, pages 1-2.

In support of his Motion, Plaintiff alleges that on November 21, 2007, while returning from Sing Sing Correctional Facility, Plaintiff was attacked at Downstate Correctional Facility on the transport bus.  Plaintiff alleges that the attack was by an unknown blood gang member who Plaintiff was shackled to during transport.  Plaintiff alleges that he suffered a broken hand from the November 21, 2007 attack.  Plaintiff alleges that the prison officials at Upstate were warned about Plaintiff's enemies at Upstate prior to the attack.  Plaintiff attached letters dated April 25, 2007 to Brian Fischer and Lucien Leclaire alleging that he has been threatened by unidentified gang

members.³ Dkt. No. 21, pages 8-9 and 12-13.  Also attached to the Motion is a fax transmittal sheet, dated May 1, 2007, from Mr. LeClaire to Superintendent Woods, at Upstate Correctional Facility, directing an investigation into the allegations. There is a handwritten notation signed by Superintendent Woods stating "Investigate and respond as directed below.  Ensure the supervisor investigating seeks the names of identity of those he claims are threatening him, when, where, and how he receives the threats." Dkt. No. 21, Page 14. Plaintiff provided no information regarding the result of that investigation with this motion.⁴ Plaintiff filed a grievance on December 8, 2007 based upon the November 21, 2007 incident, seeking transfer out of Upstate Correctional Facility. Dkt. No. 21, page 17.

In their Response to this Motion, Defendants assert that Plaintiff has no right to be confined at a facility of his choice.  Defendants argue that Plaintiff's assertion that he might be injured at Upstate does not rise to the level of irreparable harm.  Dkt. No. 25. In addition, the Defendants note that Plaintiff's only allegations of injury is an event that occurred while Plaintiff was traveling between facilities, not while he was housed at Upstate.  Defendants claim that, "[i]f anything, plaintiff's papers demonstrate that he is at risk when traveling from facility to facility, not while he is safely house at Upstate."

---

³Plaintiff filed a grievance at Upstate Correctional Facility on the same date. *See* Dkt. No. 8, page 6.

⁴However, the Court notes that in his original Motion for injunctive relief, Plaintiff annexed an IGRC response to the April 25, 2007 grievance which states that "[a]n investigation was done, it was shown that the grievant has one enemy inmate, this inmate in question, locks in another SHU block." Dkt. No. 8.  The Superintendent's response to Plaintiff's grievance was issued on May 14, 2007 and states that "[a]n investigation reveals that there is no imminent danger to the grievant. *Id.*

4

*Id*., page 3.  Further, Defendants assert that Plaintiff is presently housed in one of the most secure facilities.  This assertion is based upon the Declaration of Donald Quinn, in which Quinn states that the entire Upstate facility is "dedicated to serve as a Special Housing Unit - the most secure type of housing available in the Department of Correctional Services.   Moreover, at Upstate, plaintiff is designated to be and is secured in the most secure type of housing inside Special Housing Units and at this facility, a single cell." Dkt. No. 25, Quinn Declaration, paragraph 4.  Quinn states that Plaintiff is routinely subjected to "unique security measures, including the use of corrections escorts for all travel inside the facility, extraordinary measures to limit access to contraband and other materials that could be fashioned into weapons, and measures to guarantee that access to general population inmates is strictly limited and prohibited." *Id*., paragraph 5.  Finally, Quinn states that " ... because plaintiff finds himself unable to identify all the inmates with particularity whom he asserts pose a danger to him in any population, its particularly appropriate to house him at Upstate because the facility itself is dedicated to Special Housing and the risks posed by exposing him to other inmates at other facilities are entirely avoided.  *Id*., paragraph 6.

In his Reply, Plaintiff asserts that he is not secure "on call-outs nor visits ... where seven (7) inmates are confined in each visiting room." Dkt. No. 26.  Plaintiff mentions, in passing, the fact that he is required to go to the visiting room in his amended Complaint.  Dkt. No. 7, paragraph 25.  However, Plaintiff does not allege, either in the Complaint or in his Motion papers, that he has ever been injured, or even threatened with injury, while in a visiting room. Rather, plaintiff suggests that his family

will not visit him due to the alleged threats against him.

### III.     The Standards.

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id*. at 77 (affirming district court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre*, 850 F.Supp. 143, 144 (N.D.N.Y. 1994) (McAvoy, C.J.).

### A.     Irreparable Harm.

"The showing of irreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'" *Brown v. Middaugh*, 1998 WL 566791 at *1 (N.D.N.Y. Sept. 3, 1998) (Munson, S.J.) (citations omitted). "The mere possibility of harm is not sufficient: the harm must be imminent and the movant must show he is likely to suffer irreparable harm if equitable relief is denied." *Id*. "Nor will a preliminary injunction be granted if the movant can be compensated adequately by money damages." *Id*.

As to this first factor, with respect to the request that Plaintiff be transferred to a different facility for his safety, Plaintiff has not alleged that he sustained any injury while at Upstate Correctional Facility. Rather, he was injured at Downstate Correctional

Facility, while being transported. Thus, Plaintiff does not seek to prevent ongoing conduct. Rather, he seeks to avoid the possibility of such an event occurring in the future. The Court notes that allegations of future injury without more do not establish a real threat of injury. *Gibson v. Walker*, 95-CV-1649, (N.D.N.Y. Dec. 7, 1995) (DiBianco, M.J.) (Docket No. 6), *adopted,* (Docket No. 8) (Feb. 2, 1996) (citing *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238 (S.D.N.Y. June 27, 1994)). Plaintiff has failed to establish that he is likely to suffer irreparable harm, based upon the facts and allegations presently before this Court. Therefore, this Court must deny Plaintiff's Motion for injunctive relief.

WHEREFORE, based upon the above, it is hereby

ORDERED, that Plaintiff's Motion for injunctive relief (Dkt. No.8) is denied as moot, and it is further

ORDERED, that Plaintiff's Motion for injunctive relief (Dkt. No.21) is denied for the reasons set forth above, and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

Dated: January 30, 2008

Thomas J. McAvoy
Senior, U.S. District Judge