UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------
JOHNATHAN JOHNSON,

                           Plaintiff,

          v.                                            9:07-CV-1237
                                                                   (TJM)(DEP)
B. CONNOLLY, Doctor, *et al.*,
                         Defendants.
----------------------------------------------------------------------

**APPEARANCES**                         **OF COUNSEL:**

JOHNATHAN JOHNSON
Plaintiff *pro se*
89-A-1042

HON. ANDREW M. CUOMO           CHRISTOPHER W. HALL, ESQ.
Office of the Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

THOMAS J. MCAVOY, SENIOR JUDGE

## DECISION and ORDER

     Presently before the Court is a third Motion by Johnathan Johnson[1] ("Plaintiff" or

"Johnson") for injunctive relief.[2]  Dkt. No.41.  The Defendants have filed a Response in

opposition to the Motion (Dkt. No.45), and Plaintiff filed a Reply.  Dkt. No. 46.

---

     [1]Plaintiff is an experienced *pro se* litigator who has filed thirty one (31) other actions in this District.

     [2]Plaintiff filed his first Motion for Preliminary Injunction in the Western District of New York.  Dkt. No. 8.  This action was transferred to the Northern District of New York before the Defendants were directed to answer the Motion.  Dkt. No. 16.  Thereafter, Plaintiff filed his second Motion for a Preliminary Injunction seeking the same relief as the first Motion.  Dkt. No.  The first Motion was denied as moot, and the second Motion was adjudicated on its merits.  *See* Dkt. No. 30, January 30, 2008 Order addressing the first two Motions for injunctive relief.  Plaintiff presently has an appeal from the January 30, 2008 denial of his Motion for Preliminary Injunction pending before the Second Circuit.

**I.     BACKGROUND.**

    **A.     Plaintiff's Complaint.**

Plaintiff's amended Complaint alleges causes of action for deliberate indifference due to the Upstate Correctional Facility's staff failing to provide Plaintiff with the same medications as provided to him at Elmira Correctional Facility, retaliatory transfer from Elmira to Upstate due to Plaintiff's request that video tape of an incident be preserved for future litigation, and failure to protect Plaintiff from known enemies at Upstate Correctional Facility.  *See* Dkt. No. 7.  With respect to the alleged failure to protect, Plaintiff alleges that he wrote to the deputy superintendent of security regarding his safety concerns "to no avail."  *Id*., paragraph 26.  Plaintiff further alleges that he is "being forced" by the facility administration to go to the visiting room.  *Id*., paragraph 25.  Defendants filed their Answers to the amended Complaint on December 12, 2007.  Dkt. Nos. 19 and 20.

    **B.     Plaintiff's First Motion for Injunctive Relief.**

On December 19, 2007 Plaintiff filed a Motion for a Preliminary Injunction.  Dkt. No. 21.  In that Motion, Plaintiff sought an Order directing the Defendants to "transfer plaintiff to another facility for his and family safety from Upstate Correctional Facility's blood gang members to a correctional facility where plaintiff could be safe from violence on inmate visitor program [visiting room] and other areas of a state of department of correctional facility in close or close area for visits with plaintiff's family members. And in a facility that plaintiff could be properly supervise and properly protected on and off the visits at the present facility."  Dkt. No. 21, pages 1-2.

In support of his Motion, Plaintiff alleged that on November 21, 2007, while returning from Sing Sing Correctional Facility, Plaintiff was attacked at Downstate Correctional Facility on the transport bus. Plaintiff alleged that the attack was by an unknown blood gang member who Plaintiff was shackled to during transport. Plaintiff alleged that he suffered a broken hand from the November 21, 2007 attack. Plaintiff alleged that the prison officials at Upstate were warned about Plaintiff's enemies at Upstate prior to the attack. Plaintiff attached letters dated April 25, 2007 to Brian Fischer and Lucien Leclaire alleging that he has been threatened by unidentified gang members.[3] Dkt. No. 21, pages 8-9 and 12-13. Also attached to the Motion was a fax transmittal sheet, dated May 1, 2007, from Mr. LeClaire to Superintendent Woods, at Upstate Correctional Facility, directing an investigation into the allegations. There is a handwritten notation signed by Superintendent Woods stating "Investigate and respond as directed below. Ensure the supervisor investigating seeks the names of identity of those he claims are threatening him, when, where, and how he receives the threats." Dkt. No. 21, page 14. Plaintiff provided no information regarding the result of that investigation with the Motion.[4] Plaintiff filed a grievance on December 8, 2007 based upon the November 21, 2007 incident, seeking transfer out of Upstate Correctional

---

[3]Plaintiff filed a grievance at Upstate Correctional Facility on the same date. *See* Dkt. No. 8, page 6.

[4]However, the Court notes that in his original Motion for injunctive relief, Plaintiff annexed an IGRC response to the April 25, 2007 grievance which states that "[a]n investigation was done, it was shown that the grievant has one enemy inmate, this inmate in question, locks in another SHU block." Dkt. No. 8. The Superintendent's response to Plaintiff's grievance was issued on May 14, 2007 and states that "[a]n investigation reveals that there is no imminent danger to the grievant. *Id.*

3

Facility. Dkt. No. 21, page 17.  In his Reply, Plaintiff asserted that he is not secure "on call-outs nor visits ... where seven (7) inmates are confined in each visiting room." Dkt. No. 26.  The Court previously noted that Plaintiff did not allege, either in the Complaint or in his Motion papers, that he had ever been injured, or even threatened with injury, while in a visiting room.  Rather, Plaintiff suggested that his family will not visit him due to the alleged threats against him.

> This Court denied Plaintiff's Motion finding that:
>
> Plaintiff has not alleged that he sustained any injury while at Upstate Correctional Facility.  Rather, he was injured at Downstate Correctional Facility, while being transported.  Thus, Plaintiff does not seek to prevent ongoing conduct.  Rather, he seeks to avoid the possibility of such an event occurring in the future. The Court notes that allegations of future injury without more do not establish a real threat of injury.  *Gibson v. Walker*, 95-CV-1649, (N.D.N.Y. Dec. 7, 1995) (DiBianco, M.J.) (Docket No. 6), *adopted,* (Docket No. 8) (Feb. 2, 1996) (citing *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238 (S.D.N.Y. June 27, 1994)).  Plaintiff has failed to establish that he is likely to suffer irreparable harm, based upon the facts and allegations presently before this Court.

Dkt. No. 30.

## II.     PLAINTIFF'S PRESENT MOTION FOR INJUNCTIVE RELIEF.

Plaintiff filed the present Motion on June 30, 2008, seeking an Order compelling the Defendants to move him to "another federal or state correctional facility for his [plaintiffs] and his family safety from Upstate Correctional Facility's Blood unknown gang members threats of bodily injuries and his family members as well."  Dkt. No. 41.

In support of his Motion, Plaintiff alleges that on May 18, 2008 his sister was pushed, by another visitor, while at the vending machines in the visiting area of Upstate Correctional Facility.  *Id.*  Plaintiff also alleges that he was verbally threatened on the same day by an unknown blood gang member inmate who was also in the visiting

4

room. Plaintiff alleges that he filed a complaint with Brian Fischer, but no action was taken.[5] Plaintiff alleges that he filed a grievance on May 18, 2008 but the Superintendent refused to review video footage or take any corrective action.[6] *Id.* The Superintendent's response to the grievance indicates that Plaintiff was interviewed by a security supervisor, but Plaintiff could not identify the inmate that threatened him, that Plaintiff could not identify any visitor that threatened his sister, and that the alleged video tape Plaintiff refers to does not exist. *Id,* Exhibit C. .

Defendants responded to the Motion on July 16, 2008. Dkt. No. 45. Annexed to the Defendants' response is an Affidavit from Ms. Caron, who is not a party to this action. Ms. Caron is Plaintiff's Corrections Counselor. Ms. Carson confirms that Plaintiff's sister and brother-in-law visited him on May 18, 2008. *Id.* Ms. Carson also states that her review of the records reveals no record that Plaintiff's sister was pushed or assaulted, and no record of any altercation or threats involving Plaintiff. Ms. Carson states that such events would be logged in the Watch Commander's Log Book. *Id.* Ms. Caron also provided the Court a May 28, 2008 memorandum written by Sgt. Kourofsky, who also is not a party to this action.[7]  *Id.*, Exhibit B. That memorandum indicates that Kourofsky undertook an investigation of Plaintiff's allegations regarding the events of

---

[5]Plaintiff annexed to this Motion a letter to Fischer dated May 18, 2008. Dkt. No. 41, Exhibit A.

[6]Plaintiff annexed a Grievance Complaint to the Motion that is dated May 18, 2008 and reflects that it was received by the Grievance Clerk on May 27, 2008. Dkt. No. 41, Exhibit B.

[7]Caron states that Kourofsky was assigned to investigate the allegations that Plaintiff and his sister had been threatened on May 18, 2008.

May 18, 2008. Kourofsky reports that Plaintiff stated that his sister was pushed and verbally threatened near the vending machines in the visiting area by another visitor. Plaintiff also reported to Kourofsky that he had been threatened by another inmate, whom Plaintiff could not identify except to state that he was a "Blood." *Id.* Kourofsky indicated that the situation appears to be an outside matter stemming from events on the street. *Id.* Kourofsky states that, other than continuing to monitor visitors and inmates in the visiting area, there appears to be nothing the facility can do at this time. *Id.*

Caron's Affidavit also provided the Court with insight regarding the security presently being provided to Plaintiff. Dkt. No. 45. Caron states that Plaintiff lives under very secure conditions at Upstate Correctional Facility in that he resides in a single cell with three solid walls and a metal door with a locked feed-up slot. *Id.* Plaintiff receives one hour of recreation per day in a solitary pen. When Plaintiff leaves his cell he is always escorted by a minimum of two correctional officers. *Id.* Caron states that she last spoke with Plaintiff on June 26 or 27, 2008 and he made no mention regarding his physical safety being threatened. *Id.*

In his July 23, 2008 Reply, Plaintiff states that he is not secure in the visiting room because there are multiple inmates in each visiting room. Dkt. No. 46. Plaintiff states that Brian Fischer has the authority to transfer him to another facility and should do so because of the complaints Plaintiff has brought to his attention regarding his safety and the safety of Plaintiff's family.

**III.   THE STANDARDS.**

6

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id*. at 77 (affirming district court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre*, 850 F.Supp. 143, 144 (N.D.N.Y. 1994) (McAvoy, C.J.).

**A.    Irreparable Harm.**

"The showing of irreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'" *Brown v. Middaugh*, 1998 WL 566791 at *1 (N.D.N.Y. Sept. 3, 1998) (Munson, S.J.) (citations omitted). "The mere possibility of harm is not sufficient: the harm must be imminent and the movant must show he is likely to suffer irreparable harm if equitable relief is denied." *Id*. "Nor will a preliminary injunction be granted if the movant can be compensated adequately by money damages." *Id*.

As to this first factor, Plaintiff has not alleged that he sustained any injury while at Upstate Correctional Facility. Rather, he alleges that he was verbally threatened on May 18, 2008. Thus, Plaintiff does not seek to prevent ongoing conduct. Rather, he seeks to avoid the possibility of such an event occurring in the future. The Court notes that allegations of future injury without more do not establish a real threat of injury. *Gibson v. Walker*, 95-CV-1649, (N.D.N.Y. Dec. 7, 1995) (DiBianco, M.J.) (Docket No.

6), *adopted,* (Docket No. 8) (Feb. 2, 1996) (citing *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238 (S.D.N.Y. June 27, 1994)). Moreover, allegations of threats or harassment are too speculative to establish irreparable harm. *Slacks v. Gray*, 2008 WL 2522075, *1 (N.D.N.Y. 2008)(Mordue, C.J.). Thus, this Court finds that Plaintiff has failed to establish that he is likely to suffer irreparable harm, based upon the facts and allegations presently before the Court.

In addition, Plaintiff appears to seek protection for his family, from other visitors, by way of this Motion. However, the visitors are not parties to this action. Plaintiff is advised that, except in limited circumstances not relevant herein, a Court may not order injunctive relief as to non-parties to an action. *See* Rule 65(d) of the Federal Rules of Civil Procedure ("[e]very order granting an injunction ... is binding only upon the parties to the action ..."); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988). In the event Plaintiff or his family members are threatened or harassed in the future, they should immediately report such action to the correctional officers supervising the visiting room so that the perpetrators may be identified and appropriate action may be taken.

Finally, the law is clear that an inmate does not a have a right to be confined to the prison of his own choosing. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Mendez v. Mantello*, 93-CV-0908 (N.D.N.Y. Sept. 1, 1994) (DiBianco, M.J.) (citing *Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989). The Department of Correctional Services has the authority and discretion to determine where inmates should be housed, and when transfers are appropriate. *Tinsley v. Goord*, 2006 WL 2707324 (S.D.N.Y. Sept. 18, 2006). "A state prisoner has no liberty interest in being

housed in a particular facility." *Cole v. Goord*, 2006 WL 3378145 (S.D.N.Y. Nov. 16, 2006) *citing Matiyn v. Henderson*, 841 F.2d 31, 34 (2d Cir. 1998). "In the absence of a violation of a federally protected right .... there is no basis for a federal court to interfere in DOCS' housing decisions." *Matiyn, supra.* At the present time Plaintiff has not established a violation of his federally protected rights.

> **B. Likelihood of Success on the Merits or Sufficiently Serious Questions Going to the Merits and a Balance of Hardships Tipping Decidedly Toward the Plaintiff.**

As noted above, a party is not entitled to injunctive relief unless there is also proof of likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief**.** *See Covino*, 967 F.2d at 77; *Hogan v. Russ,* 890 F. Supp 146, 105 (N.D.N.Y. 1995).

Although the allegations contained in the Motion regarding the events of May 18, 2008 occurred well after the Complaint in this action was filed, Plaintiff set forth a failure to protect claim in his amended Complaint.[8] With respect to the substance of such a claim, the Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody. *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 620 (2d Cir.1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Under 42 U.S.C. § 1983, prison

---

[8]The claims asserted in such a Motion must be related to the claims set forth in Plaintiff's amended Complaint or the Motion may be deneid. *See United States v. Regan*, 858 F.2d 115 (2d Cir. 1988); *Ross v. Keane,* 95 CV 1410 (N.D.N.Y. 2000), (Mordue, D.J.).

9

officials are liable for harm suffered by an inmate if the officials acted with "deliberate indifference" to the inmate's safety.  *Morales v. New York State Dept. of Corr.*, 842 F.2d 27, 30 (2d Cir.1988).  In order to demonstrate such deliberate indifference, the Plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official had "knowledge that an inmate face[d] a substantial risk of serious harm and he disregard[ed] that risk by failing to take reasonable measures to abate the harm.  *Hayes*, 84 F.3d at 620.

However, there is no evidence that Plaintiff was subjected to any physical harm, or even a genuine risk of physical harm, as a result of Defendants' actions.  Likewise, there is no evidence that Defendants acted with deliberate indifference to Plaintiff's safety with respect to these matters.  Rather, based upon the limited record before this Court, it appears that the Defendants have responded to, and investigated, Plaintiff's allegations regarding the threats allegedly made against him and his sister.  Accordingly, this Court finds that Plaintiff has failed to establish a likelihood success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the Plaintiff.

WHEREFORE, based upon the above, it is hereby

ORDERED, that Plaintiff's Motion for a Preliminary Injunction (Dkt. No.41) is denied for the reasons set forth above, and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

Dated:   August 21, 2008

Thomas J. McAvoy
Senior, U.S. District Judge